UNITED STATES, Appellee

v.

JOE L. DAVIS, Private First Class, U. S. Army, Appellant

2 USCMA 505, 10 CMR 3

No. 646

Decided May 14, 1953

Lt Col George E. Mickel, U. S. Army, and 1st Lt John D. Calamari, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

Appellant was convicted by general court-martial, convened at Frankfurt-am-Main, Germany, of unpremeditated murder, in violation of the Uniform Code of Military Justice, Article 118, 50 USC § 712. The convening authority approved and a board of review in the office of The Judge Advocate General, United States Army, has affirmed the conviction. The case has come to this Court on petition of the accused. A number of errors have been assigned, and we shall state necessary facts as we consider each.

### II

The specification under which appellant was brought to trial charged that he "did, at Darmstadt, Germany, on or about 3 June 1951, while perpetrating armed robbery, murder George Fritz by shooting him with a pistol." The court-martial, however, by excepting the quoted reference to robbery, found accused guilty of unpremeditated murder. Appellant contends that this was error as a matter of law in that unpremeditated murder is not an offense included within felony murder and that it could not, therefore, have been found properly by use of exceptions.

Article 118 of the Code, supra, spells out four different varieties of "murder." The first is the familiar "premeditated design to kill" offense. The second covers the situation wherein the wrongdoer, without premeditation, intended to kill or to inflict "great bodily harm" on his victim. The third applies where the accused, at the time of the homicide alleged, was engaged in the performance of an act "inherently dangerous to others" and evincing "a wanton disregard of human life." Finally, the fourth extends to so-called "felony murder" cases—those in which the accused caused the death of another while engaged in the commission of one of specified felonies. The first, by its very definition, is not "unpremeditated" murder. The fourth, because of its specific—and peculiar—elements must be placed in a category of its own, although it may, of course, represent a form of "unpremeditated" murder. Therefore, we are left with the second and third types of murder as

**507**

those which may specifically and properly be classified as "unpremeditated" —and, reverting to their jural content, we find that only the second involves an intent to kill or to inflict great bodily harm. The third, of course, requires no intent to kill, but only that the offender—when the offense was committed—was engaged in an act "inherently dangerous to others" and evincing "a wanton disregard of human life."

The Table of Commonly Included Offenses, Manual for Courts-Martial, United States, 1951, App. 12, enumerates, as included within premeditated murder and so-called felony murder, simply "Murder," meaning, we must believe, both the type characterized by an intent to kill or to inflict great bodily harm, proscribed by Article 118(2), and the sort based on an inherently dangerous act evincing a wanton disregard for human life, covered by Article 118(3).

Although the Table's authority is not conclusive in our consideration of the present problem it is certainly persuasive. Article 79 of the Code, 50 USC § 673, which provides that an accused may be found guilty of an offense necessarily included within that charged, is derived from Rule 31(c), Fed. Rules Crim. Proc. Index and Legislative History, Uniform Code of Military Justice, HH1224. We turn, therefore, to the appropriate Federal cases—and these make it abundantly clear that, whether a lesser degree of homicide is necessarily included within that charged, depends almost exclusively on *the facts stated and proved in support of the offense alleged.* Stevenson v. United States, 162 US 313, 315, 40 L ed 980, 16 S Ct 839; United States v. Leonard, 2 F 669, 670–671; United States v. Meagher, 37 F 875, 876 (Cir Ct WD Tex). To the same effect is the case law of the District of Columbia. Goodall v. United States, 180 F2d 397, 400 (CA DC Cir); Marcus v. United States, 86 F2d 854, 859 (CA DC Cir); Owens v. United States, 58 F2d 684 (CA DC Cir). This conception of the importance of the *facts* in each case necessarily means that no definitive rule applicable to all cases can be devised which will isolate those lesser degrees of hom-

icide that may necessarily be included within a charge of felony murder. One allegedly engaged in a robbery may intentionally kill another, or may strike his victim or a third party with a weapon intending to inflict great bodily harm. On the other hand the evidence may be such as to show clearly that the accused had no intention of killing or seriously injuring anyone—although another person was in fact killed during the course of a robbery alleged to have been perpetrated by him. In the former situation, if commission of the felony is not proved, it may properly be left to the court-martial to determine the possibility of guilt of a lesser degree of murder, of either the species characterized by an intent to kill or that requiring an intent to inflict grievous bodily harm. But where the evidence is similar to that in the situation posed in the second hypothetical case above, and the felony is not established, it would seem—depending on the facts— that the accused might conceivably be convicted properly either of unpremeditated murder of the variety predicated on an inherently dangerous act evincing a wanton disregard of human life, or of involuntary manslaughter, possibly even of negligent homicide.

The authorities permit us to approach no nearer a general rule than the following. Killing is the root and basis of the generic offense of homicide. Once it is established that the accused killed another, he may be convicted of guilt in the degree of homicide charged, or in any lesser degree, *provided that the lesser degree is established by the evidence* adduced as a reasonable alternative to the offense alleged. Thus, in the instant case, it was charged that accused "did . . . while perpetrating armed robbery, murder George Fritz by shooting him with a pistol." The evidence— aside from that bearing on the robbery —established that accused provoked a physical encounter with his victim, which culminated in the drawing of a pistol and the shooting and killing of the latter. If the court was not convinced that accused was engaged in the commission of a robbery, was it necessarily barred from returning a finding of guilty of unpremeditated murder?

On the basis of the evidence offered at the trial, the court might well have concluded that accused shot with intent to kill, or at least with intent to inflict great bodily harm, so as to be guilty under Article 118(2). This offense was surely presented as a reasonable alternative to that charged.

In his argument and brief, appellant has given great weight to People v. Schleiman, 197 NY 383, 90 NE 950, as establishing the proposition that unpremeditated murder cannot serve as a lesser included offense to felony murder. However, an analysis of the opinion in that case discloses that it does not say that which appellant attributes to it. Rather, it is in entire accord with other examined authorities—for what it really holds is that unpremeditated murder is not lesser included within felony murder *where there is no evidence to support it*. That this was the true *ratio* of the Schleiman case is made clear in a more recent decision of the New York Court of Appeals, reversing a trial court for refusal to charge as to certain lesser offenses, where the defendant had been tried for a killing committed during the course of a robbery, and the evidence adduced at trial tended to show that defendant had been highly intoxicated. People v. Koerber, 244 NY 147, 155 NE 79. The court's opinion in this latter case clearly set forth, as the touchstone for determining necessity of instructions on lesser degrees of homicide, the *evidence* adduced at the trial—even though the crime charged was felony murder.

We have not overlooked paragraph 158 of the Manual, supra, which states that: "An offense found is necessarily included in an offense charged if all of the elements of the offense found are necessary elements of the offense charged." We believe that this language was intended merely to furnish a working test under Article 79 of the Code, supra, which permits conviction of accused persons of a "necessarily included" offense in lieu of the offense charged. The definition contained in paragraph 158 is indeed sound and workable in the overwhelming majority of cases, but it simply and baldly fails in homicide—and, to the extent that it conflicts with the intention of Article 79, it must fall. Let us seek to demonstrate its inutility when applied to the offense of murder. To sustain a conviction of felony murder [Article 118(4)], it is not necessary to establish that accused caused the death of his victim with an intent to kill or to inflict great bodily harm [Article 118(2)]. Therefore, applying literally the test laid down in paragraph 158, unpremeditated murder of the Article 118(2) variety could not be found as lesser included within felony murder. However, if it cannot be lesser included, it must indeed be a separate offense within the definition of paragraph 76a(8) of the Manual, supra, as follows: "The offenses are separate if each offense requires proof of an element not required to prove the other." This latter conclusion is sound, we are sure, for the reason that the perpetration or attempted perpetration of a felony is necessary to felony murder but certainly is not required to establish unpremeditated murder. Conversely, unpremeditated murder as defined in Article 118(2) requires proof of an intent to kill or to inflict great bodily harm—neither of which, of course, is required to establish felony murder. Now, if the offenses are separate, and if the facts of a case are such as might sustain a conviction of felony murder, or of unpremeditated murder under Article 118(2), then the accused could be charged with and convicted of both and sentenced for each separately. Manual, supra, paragraph 76a(8). No one—we dare suggest—would countenance such a result.

Before proceeding to the next aspect in the case, it may be well to state categorically that in holding that one may be convicted of unpremeditated murder under Article 118(2) when charged with felony murder, we by no means rely on the "intent to kill" imputed by the law to one who causes the death of another during the perpetration of a felony. That course is wholly barred, we believe, for the reason that if the court finds that the accused was not engaged in the commission of a felony at the time of the killing, there is no perpetration nor attempted per-.

509

petration from which such an intent may be drawn. The intent to kill or to inflict grievous bodily injury, necessary to support the offense of unpremeditated murder must be found in evidence independent of that tending to show that accused was engaged in a robbery, or other named felony, at the time of the killing.

### III

Appellant next assigns as error the fact that the law officer charged the court that a finding of guilty might be returned if its members found that accused was, at the time of the homicide, engaged in an act "inherently dangerous. to others" and evincing "a wanton disregard of human life." The position of defense appears to be that the crime thus defined by the law officer is restricted to those cases wherein the evidence shows that the conduct of accused was dangerous to a number of individuals, demonstrating a wanton disregard of human life *in general*—that is, that the concept is inapplicable to a fact situation where, as here, the actions of the wrongdoer were directed solely against *a particular individual*. The ultimate conclusion proposed is that this portion of the charge of the law officer constituted error as a matter of law in that the evidence adduced at the trial could not support a conviction on the basis of a finding that, at the time of the killing, appellant was engaged in an act "inherently dangerous to others" and evincing "a wanton disregard of human life," for the reason that, concededly, the accused's activities were directed, not against people indiscriminately—humanity at large—but instead against his victim in particular.

There is respectable authority in square support of this proposition. The courts of New York, Utah, ▮ New Mexico, Colorado, Oklahoma, and Washington have construed their respective statutes, essentially similar in form to the related provision of the Uniform Code of Military Justice, Article 118(3), precisely in the manner appellant would have us interpret the mentioned Article of the Code. Darry v. People, 10 NY·120, 147; State v. Russell, 106 Utah 116, 129–130, 145 P2d 1003, 1009; Territory v. Nichols, 3 NM (3 Gild) 103, 2 P 78, 83; Longinotti v. People, 46 Colo 173, 102 P 165; Jewell v. Territory, 4 Okla 53, 43 P 1075; State v. Mitchell, 29 Wash2d 468, 188 P2d 88. On the other hand, the courts of Wisconsin have construed that State's similar statute to be applicable where the defendant's act was inherently dangerous and evidenced a wanton disregard for the *particular* life of his victim. Radej v. State, 152 Wis 503, 140 NW 21, 23. Likewise the courts of California, without a comparable statute, have held that a "wanton disregard of human life" is not restricted to a disregard of human life in general, but may be relied on where defendant evinced disregard for a *particular* life only. People v. Efstathiou, 47 Cal App 2d 441, 118 P2d 22. The Supreme Court of Florida, in Rivers v. State, 75 Fla 401, 78 So 343, 344, and Cruce v. State, 87 Fla 406, 100 So 264, 265, has indicated concurrence in the Wisconsin and California approach. However, it must be noted that the statute involved in these Florida cases is phrased in terms of action imminently dangerous to "another." 2 Fla Stat (1951), § 782.04. On the other hand, the statutes of New York, Wisconsin, Utah, New Mexico, Colorado, Oklahoma, and Washington are directed towards conduct imminently dangerous to "others." N. Y. Penal Law, § 1044(2); Wis Stat (1951), § 340.03; 5 Utah Code Ann (1943), 103–28–3; 3 New Mex Stat Ann (1941) § 41–2404; Colo Stat Ann, 1935, c 48, § 32; Okla Stat Ann, Tit 21, § 701; Rev Code of Wash, 1951, Tit 9, § 9.48.030. There appears to be, then, a flat conflict between the New York, New Mexico, Utah, Colorado, Oklahoma, and Washington interpretation, on the one hand, and that of Wisconsin—and in a sense, California—on the other.

Which. of these interpretations recommends itself for use in military courts? A single straw in the wind, but a frail one, is found in the Index and Legislative History, Uniform Code of Military Justice, HH1231. There, referring. to the Article with which we are here concerned, it is said that it ". . . is intended to cover those cases

**510**

where the acts resulting in death are calculated to put human lives in jeopardy, without being aimed at any one in particular." Although the words used in the Article may apply where the "wanton disregard of human life" is for life *in general*, that does not necessarily exclude the same words from applicability where the disregard is for a *particular* life. However, with this legislative guidepost, however slight, and the considerable weight of American authority pointing in the same direction, we have concluded that the argument of appellate defense counsel in this particular is well-taken. Especially does this result commend itself for use in military tribunals. Given the setting in which justice is administered in the area of our special interest, and the pressures under which its people labor, we incline to believe that the simpler rule is—other things being equal—ever the preferable one. We suspect that the position of defense counsel here is, by and large, sharper, less complex, and generally easier of administration by the law officer than its alternative. Accordingly, we hold that the conduct within the ban of Article 118(3) of the Code, supra, is only that which is "inherently dangerous to others" in that it is directed towards persons in general rather than against a single individual in particular—that is, where the actor has evinced a "wanton disregard of human life" in the general or multiple sense. Since, in this case, the evidence disclosed that accused's wicked acts were directed solely against George Fritz—so that the lives of no other persons were placed in jeopardy —it was manifest error, and in prejudicial degree, for the law officer to open the gate to the court-martial for conviction of the accused under Article 118(3). Although we cannot know that this provided the basis for the conviction returned by the court, so also we cannot be sure that it did not. The error in this regard requires, therefore, that a rehearing be ordered.

## IV

Appellant additionally assigns as error the failure of the law officer to instruct the court on the lesser included offenses of voluntary ▮▮▮▮▮ manslaughter and assault with a dangerous weapon. If those offenses were fairly and reasonably raised by the evidence, as alternatives to the offense charged, the law officer was, of course, bound to give appropriate instructions concerning their elements. United States v. Clark (No. 190), 2 CMR 107; United States v. Roman (No. 191), 2 CMR 150; United States v. Banks (No. 382), 4 CMR 71. Voluntary manslaughter is a killing which, although intentional, was committed "in the heat of sudden passion caused by adequate provocation." Uniform Code, supra, Article 119(a), 50 USC § 713(a); Manual, supra, paragraph 198a. During the altercation between appellant and his victim, which culminated in the homicide, the latter kicked appellant in the groin. Thus, it is said, was raised the possibility that the shooting was in fact the product of "sudden passion caused by adequate provocation." The difficulty with this argument is that it lifts the kicking incident quite out of context. Actually— the record discloses—appellant was the aggressor throughout the difficulty with his victim, a taxi operator. He first struck the driver. In fact, by continuing the attack, he effectively prevented one attempt on the part of the victim to withdraw from the conflict. Appellant finally shot Fritz when the latter, after the kicking in question, had again attempted to withdraw by returning to his vehicle. Considered in its proper setting, the taxi driver's kick was his means—and perhaps not improper under the circumstances—of protecting himself from appellant's attack. As such it could not at all provide the necessary provocation for the shooting by appellant which followed. See United States v. Banks, supra; Manual, supra, paragraph 198a.

The assertion by appellant that instructions as to assault with a dangerous weapon were required ▮▮▮▮▮ may be dealt with briefly. The short answer to this position—as observed aptly by appellate Government counsel—is that since appellant's acts caused the death of

his victim, he must necessarily, under the facts of this case, have been guilty of homicide in *some* degree rather than of a variety of assault.

## V

Appellant's final assignment raises several questions. He contends that a written confession and an oral confession—or admission—were improperly received in evidence for the reason that he had not been warned in accordance with the provisions of Article 31 of the Code, supra, 50 U. S. C. § 602. The record simply does not support this assertion. On the contrary, it discloses that he was warned so repeatedly that he was not required to furnish a statement, and that whatever he said might be taken down and used in evidence against him, that he inquired at one point, "Do I have to listen to that again?"

It is argued also that the law officer deprived the members of the courts-martial of their prerogative to determine for themselves the question of voluntariness of the written confession of appellant admitted in evidence. The basis for this assertion is the following statement of the law officer made after his ruling that the confession would be received in evidence:

> "The court is advised that the admission of this alleged confession into evidence is in no way to be considered as bearing on the truth or falsity of the statements contained therein. The law officer's ruling pertains only to the voluntary nature of the confession."

The only possible infirmity in this statement has to do with the failure of the law officer to go far enough. Indeed he should also have informed the court that each member might determine the issue of voluntariness for himself. In this respect, the shortcoming of the law officer is to be found not so much in what he said as in what he did not say. Perhaps this may have been due in part to an apparent inconsistency in paragraph 140a of the Manual, supra, itself. That paragraph states that no confession shall be admissible in evidence unless it is voluntary. It also quite clearly provides that the ruling of the law officer shall be final as to the admissibility of a confession. Logically, it would seem to follow that under relevant rules the law officer makes the final determination of the voluntariness of a proffered confession. Yet the same paragraph provides, in addition, that his ruling is not conclusive as to voluntariness—that each member, during the court's deliberations, may come to his own conclusion concerning the voluntary nature of the confession. We are sure this latter portion must control, with the result that the law officer here, in failing to advise the court that his ruling was not conclusive on the issue of voluntariness, fell into error.

However, whether this isolated irregularity requires that appellant's conviction be set aside is a horse of a different color. Paragraph 73c of the Manual, supra, explicitly provides that the law officer is *required* to give instructions *only* as to the matters set out in Article 51(c) of the Code, supra, 50 U. S. C. § 626(c)—that is, as to the elements of the offense charged, the presumption of innocence, burden of proof, and the like. Therefore, the omission of the law officer here does not reach the level of an omission of instructions as to those matters dealt with earlier by this Court in numerous cases. United States v. Clay (No. 49), 1 CMR 74; United States v. Keith (No. 226), 4 CMR 34. We are sure the defection of the law officer in this case does not require reversal. Here there was no real issue as to voluntariness save in defense counsel's mind, and manifested by him in cross-examination questions directed to prosecution witnesses. The only item relied on by appellate defense counsel as suggesting coercion in *any* degree is testimony to the effect that one Hawthorne had been "pretty angry" with appellant at one point in the interrogation of the latter— as well he might have been, for appellant had informed the authorities that it was he, Hawthorne, who had committed the homicide. However, taking this into account fully, there is no scintilla of evidence of causal connection

between the ire of Hawthorne and appellant's confession. Considering the problem in this context, it is abundantly clear that express submission by the law officer of the issue of voluntariness to the court would have been little more than an idle formality. His failure to do so cannot possibly warrant reversal of appellant's conviction.

A further argument submitted by appellant relates to the stage at which he was permitted to question the voluntariness of an oral confession — or series of oral admissions—received in evidence through testimony of a prosecution witness. Before this witness began his testimony, the law officer informed defense that the voluntary nature of any statement of appellant might be contested only after it had been related by the witness. Defense objected to this procedure "solely for the record"— whatever this means. Conceding the possible irregularity of this procedure, we must take into account the rather peculiar nature of the problem. It was not as though the prosecution proposed to offer a written confession—an isolated document—the context of which could be examined within a relatively short period of time. The witness here was called to testify to repeated oral statements of appellant which, it would seem, could hardly have been contested until they were disclosed. There *was* a possible alternative—and we regard this as the preferable procedure in this type of situation. The law officer could well have excused the members of the court and could have determined, out of their presence, the substance of the prospective testimony of the witness. Recalling the court, he could then have instructed them that the prosecution had proposed a witness to testify to an oral confession—or admission, as the case might be—of the accused, but that defense had questioned its voluntary nature. At this juncture, testimony and other relevant evidence bearing on the question of voluntariness could have been received and passed on. However, we cannot say that the practice followed here did not meet minimum standards in the area of procedural safeguards. Certainly it permitted defense to contest the matter of voluntariness thoroughly. We cannot conclude that it should necessarily be branded as error. Surely there is no indication whatever that defense was materially prejudiced. Accordingly, we find no substance in the collective fourth assignment of error by appellate defense counsel.

For the reason assigned, the decision of the board of review is reversed and a rehearing is ordered.

Chief Judge QUINN and Judge LATIMER concur.