**UNITED STATES**

v.

**Craig P. LITTLES, 257 02 2422
Lance Corporal (E–3), U.S.
Marine Corps.**

**NMCM 89 3620C.**

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 1 March 1989.

Decided 30 June 1992.

LT P.J. Wiernicki, JAGC, USNR, Appellate Defense Counsel.

LCDR P. McNeill Jones, JAGC, USN, Appellate Defense Counsel.

LT R.M. Medeiros, JAGC, USNR, Appellate Defense Counsel.

LT John J. Mulrooney II, JAGC, USNR, Appellate Government Counsel.

LT Dwight N. Mersereau, JAGC, USNR, Appellate Government Counsel.

LT T.S. Susanin, JAGC, USNR, Appellate Government Counsel.

Before JONES, REED and LAWRENCE, JJ.

LAWRENCE, Judge:

Appellant was tried by general court-martial, military judge alone, and contrary to his pleas was convicted of violating Articles 108, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 908, 921, and 934. He was sentenced to a dishonorable discharge, confinement for 12 years, total forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority disapproved the findings of guilty of two specifications of larceny and, upon reassessment, approved the sentence. The Naval Clemency and Parole Board subsequently directed that confinement in excess of 8 years be remitted.

After examining the record and the briefs of the parties concerning three assignments of error,[1] we requested that counsel brief three additional issues.[2] In an unpublished decision, we concluded that

1.
I. THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION TO DISMISS ALL CHARGES AND SPECIFICATIONS BECAUSE APPELLANT'S WRITTEN CHRONOLOGY AND DISCUSSION NOTES, WHICH WERE SEIZED BY THE GOVERNMENT WHEN HE WAS INCARCERATED AT THE FORT MEADE CORRECTIONAL FACILITY, WERE PRIVILEGED LAWYER–CLIENT COMMUNICATIONS PROTECTED BY MILITARY RULE OF EVIDENCE 502(a).
A. ALL OF THE DOCUMENTS SEIZED FROM APPELLANT ON 24 AUGUST WERE CONFIDENTIAL COMMUNICATIONS BETWEEN APPELLANT AND HIS DETAILED TRIAL DEFENSE COUNSEL.
B. APPELLANT'S ATTORNEY–CLIENT PRIVILEGE WAS VIOLATED WHEN THE GOVERNMENT INTENTIONALLY RETAINED CONFIDENTIAL DOCUMENTS PREPARED BY APPELLANT AT THE REQUEST OF HIS COUNSEL FOR USE IN HIS DEFENSE.
C. THE BREACH OF APPELLANT'S ATTORNEY–CLIENT PRIVILEGE BY THE GOVERNMENT SUBSTANTIALLY PREJUDICED APPELLANT, AND THE MILITARY JUDGE ERRED IN FAILING TO GRANT THE APPROPRIATE RELIEF.

II. THE EVIDENCE PRESENTED AT TRIAL FAILED TO PROVE BEYOND A REASONABLE DOUBT APPELLANT'S GUILT AS TO SPECIFICATIONS 1–8 OF ADDITIONAL CHARGE II.
III. THAT PORTION OF APPELLANT'S SENTENCE INCLUDING CONFINEMENT FOR 12 YEARS IS INAPPROPRIATELY SEVERE.

2.
1. In Specification 1 of Charge II the accused was charged with unlawfully selling a stolen firearm in violation of Article 134, UCMJ; he was found guilty by exceptions and substitutions of a violation of Article 108. Record at 416 and 448. Is Article 108 a lesser-included offense of Article 134?
2. If Article 108 is a lesser-included offense of Article 134, does the finding, as announced by the military judge, allege an offense? Or, must the finding of guilty to an Article 108 specification include the words "without proper authority?"
3. Did Special Agent Kennedy's testimony parading the legal problems of the appellant's father before the Court during aggravation on sentencing (R. 424 ff.), so taint the sentencing proceedings as to require a rehearing on sentence? *See generally, United States v. Stroup,* 29 M.J. 224 (C.M.A.1989).

the finding of guilty of Specification 1 of Charge II must be set aside and dismissed because the offense of which appellant was convicted by exceptions and substitutions was not a lesser included offense of the offense charged. Additionally, we found that prosecution sentencing evidence concerning appellant's father's prior criminal history was erroneously admitted and constituted prejudicial error. The sentence was set aside and the case was returned to the Judge Advocate General for a rehearing on sentence. Thereafter, the Government requested reconsideration of our decision regarding Specification 1 of Charge II and, following our affirmance of that conviction, reassessment of sentence by us. We granted the request to reconsider our prior decision.

### *The Article 108 Conviction as a Lesser Included Offense*

■ Specification 1 of Charge II alleged a violation of Article 134 by selling an M16–A2 firearm "knowing or having reasonable cause to believe that the M16–A2 firearm was stolen, in violation of 18 U.S. Code Section 922." [3] After a contested trial, the military judge found appellant guilty by excepting the words quoted above and substituting the words "of some value" and "military property of the United States." He found appellant not guilty of violating Article 134 but guilty of violating Article 108 by unlawfully selling military property, a stolen M16–A2 firearm. The specification as excepted and substituted thus reads:

> In that [appellant] ... did, ... unlawfully sell a stolen M16–A2 firearm, of some value, military property of the United States. [4]

The issue before us is whether this Article 108 offense is a lesser included offense of

the Article 134 offense by violating 18 U.S.C. § 922. We hold that it is not.

The Federal Rules of Criminal Procedure were promulgated in 1944. Since that date, Federal Rule of Criminal Procedure 31(c) [hereinafter Rule 31(c)] has provided that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged...." Indeed, Rule 31(c) was no more than a codification of pre-existing law regarding conviction of a lesser included offense. *Keeble v. United States,* 412 U.S. 205, 208 n. 6, 93 S.Ct. 1993, 1995 n. 6., 36 L.Ed.2d 844, 847 n. 6 (1973). Article 79, UCMJ, 10 U.S.C. § 879, became law in 1951 and, mirroring the language of Rule 31(c), provides that "an accused may be found guilty of an offense necessarily included in the offense charged." The legislative history of Article 79 makes clear that "the language of the [Article] is derived from the Federal Rules of Criminal Procedure." *A Bill to Unify, Consolidate, Revise, and Codify the Articles of War, the Articles for the Government of the Navy, and the Disciplinary Laws of the Coast Guard, and to Enact and Establish a Uniform Code of Military Justice, Hearings on H.R. 2498 Before a Subcomm. of the Comm. on Armed Services,* 81st Cong., 1st Sess. 1224 (1949).

As initially drafted, the Manual for Courts–Martial, United States (MCM), 1951, adopted a strict elements test for determining lesser included offenses and provided that "[a]n offense is not included within an offense charged if it requires proof of any element not required in proving the offense charged or if it involves acts of which the accused was not apprised upon his arraignment." MCM, 1951, ¶ 158. This language was entirely consistent with the "elements approach" to determining lesser included

---

3. The specification failed to list an element of the federal statute, namely, that "the stolen firearm was moving as, part of, or constituted interstate commerce." *See* footnote 6, *infra.* Appellant did not attack the sufficiency of the specification at trial and does not allege its failure to state an offense on appeal.

4. As excepted and substituted, the specification does not contain the words "without proper authority," an element of an Article 108 offense.

The specification as excepted and substituted did state that the sale was unlawful and that the firearm was stolen, language that clearly embraces the concept of the term "without authority." The substituted language of "some value" is mere surplusage since value is irrelevant if the item sold is a firearm. Manual for Courts–Martial, United States, 1984, Part IV, ¶ 32e(1)(b).

offenses in the federal courts, an approach that "was settled doctrine at the time of [Rule 31(c)'s] promulgation and for more than two decades thereafter." *Schmuck v. United States,* 489 U.S. 705, 720, 109 S.Ct. 1443, 1452, 103 L.Ed.2d 734, 748 (1989).

The elements approach did not remain settled doctrine in military law, however. Citing *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896), and other federal cases, the Court of Military Appeals held that "whether a lesser degree of homicide is necessarily included within that charged, depends almost exclusively on *the facts stated and proved in support of the offense alleged.*" *United States v. Davis,* 2 C.M.A. 505, 508, 10 C.M.R. 3, 6 (1953). In *United States v. Duggan,* 4 C.M.A. 396, 15 C.M.R. 396 (1954), in finding that riot may be a lesser included offense of mutiny, the Court stated:

> [W]e must look to the allegations of the specification, and proof in support thereof, in each case to determine whether a lesser included offense is in issue. While the standards we have adopted in considering whether one offense is included in another may be more generous than those prescribed by other courts, in an unbroken line of decisions we have made the test turn on both the charge and the evidence. When both offenses are substantially the same kind so that accused is fairly apprised of the charges he must meet and the specification alleges fairly, and the proof raises reasonably, all elements of both crimes, we have held they stand in the relationship of greater and lesser offenses.

4 C.M.A. at 399–400, 15 C.M.R. at 399–400. Subsequent cases followed this principle, and by the mid–1960's the *Duggan* approach had become the "basic test" for determining whether or not an offense is included in a charged offense. *United States v. Thacker,* 16 C.M.A. 408, 37 C.M.R. 28, 30 (1966).

This broad approach for determining lesser included offenses was reiterated by the Court of Military Appeals in *United States v. Baker,* 14 M.J. 361 (C.M.A.1983).

In addition to a traditional elements approach, the Court stated that a lesser included offense also exists "where one offense contains different elements as a matter of law from the other offense, but these different elements are fairly embraced in the factual allegations of the other offense and established by evidence introduced at trial." *Id.* at 368. This expansive approach is similar to the inherent relationship test for determining lesser included offenses under Rule 31(c) that developed in the federal courts and which is discussed *infra.*

*Thacker* is the cited basis for the present Manual rule for determining lesser included offenses. MCM, 1984, Part IV, ¶ 2, Analysis. The present Manual rule encompasses the first part of the "fairly embraced" approach in *Baker* by providing that "[a] lesser offense is included in a charged offense when the specification contains allegations which either expressly or by fair implication put the accused on notice to be prepared to defend against it in addition to the offense specifically charged." MCM, 1984, Part IV, ¶ 2. The 1984 Manual, however, makes no reference to the evidence adduced in the trial. The notice requirement may be met by a strict analysis of the elements; however, "[t]he notice requirement may also be met, depending on the allegations in the specification, even though an included offense requires proof of an element not required in the offense charged." *Id.*

A similar divergence from a strict elements approach to determining lesser included offenses developed in the federal courts. *See United States v. Schmuck,* 840 F.2d 384, 387 n. 5 (7th Cir.1988) (cases cited in footnote). Some circuits adhered to the "traditional" or "elements" approach.

> Under this test, one offense is not "necessarily included" in the other unless the elements of the lesser offense are a subset of the elements of the charges offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).

*Schmuck,* 489 U.S. at 716, 109 S.Ct. at 1450, 103 L.Ed.2d at 746. This test is virtually identical to that contained in the 1951 Manual. Other circuits adopted an "inherent relationship" approach as exemplified by *United States v. Whitaker,* 447 F.2d 314 (D.C.Cir.1971). Under this approach, a defendant would be entitled to invoke Rule 31(c) to obtain a lesser included offense instruction

> [W]hen a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must be an "inherent" relationship between the greater and lesser offenses, *i.e.,* they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.

447 F.2d at 319. *See Schmuck v. United States,* 489 U.S. at 715–16, 109 S.Ct. at 1450, 103 L.Ed.2d at 746. The inherent relationship approach is obviously similar to the approach set forth in *Davis, Duggan,* and *Baker.*

The variance in approaches between the circuits continued until 1989 when it was resolved by the U.S. Supreme Court in *Schmuck v. United States.* The Court unequivocally adopted the elements approach to Rule 31(c). The Court noted, first, that the wording of Rule 31(c) supports use of the elements approach. Additionally, the Court stated that constitutionally "a defendant cannot be held to answer a charge not contained in the indictment brought against him," based in part on his right to "notice of the charge brought against him." 489 U.S. at 717, 109 S.Ct. at 1451, 103 L.Ed.2d at 747. Consideration of the evidence adduced at trial in determining whether a lesser included offense instruction should be given may not provide the defendant with constitutionally sufficient notice to defend since this determination occurs after trial on the merits. Second, the Court found that the history of Rule 31(c) supported adoption of the elements approach. Lastly, the Court found that the elements approach "is far more certain and predicta-

ble in its application than the inherent relationship approach." 489 U.S. at 720, 109 S.Ct. at 1452, 103 L.Ed.2d at 749.

*Davis,* which began the expansion of the military approach towards determining lesser included offenses and was the immediate forerunner of *Duggan,* was in part based on the U.S. Supreme Court's decision in *Stevenson,* as noted previously. *Stevenson,* however, was cited in *Schmuck,* 489 U.S. at 720, 109 S.Ct. at 1452, 103 L.Ed.2d at 746, as an example of a case in which the U.S. Supreme Court carefully compared statutory elements in determining the existence of a lesser included offense. In *Baker,* the Court of Military Appeals said that its "fairly embraced" approach was "consistent with the accepted interpretation of modern criminal statutes." 14 M.J. at 368. The cited decisional authority for this conclusion is *Jeffers v. United States,* 432 U.S. 137, 152 n. 20, 97 S.Ct. 2207, 2217 n. 20, 53 L.Ed.2d 168, 181 n. 20 (1977), a citation now inapposite in light of the statement in *Schmuck* that U.S. Supreme Court "decisions after the adoption of Rule 31(c), while not formally adopting the elements approach, reflect adherence to it. Those decisions have focused on the statutory elements of individual offenses when considering the propriety of lesser included offense instructions." 489 U.S. at 720 n. 11, 109 S.Ct. at 1452 n. 11, 103 L.Ed.2d at 749 n. 11. *Schmuck* provides an authoritative interpretation of Rule 31(c) and thus Article 79. In interpreting previous U.S. Supreme Court and federal circuit decisions, the decision makes clear that these cases provide no authority or precedent for the "fairly embraced" approach of *Baker.*

■ Based on *Schmuck,* the Court of Military Appeals already has indicated that the broad *Baker* approach is no longer appropriate. *See United States v. Carter,* 30 M.J. 179, 181 (C.M.A.1990). We conclude that because Article 79 is derived from, and is identical in wording to, Rule 31(c) which after *Schmuck* requires an elements approach in determining lesser included offenses, and because the cited decisional authority and precedent in *Davis, Duggan,* and *Baker* has been shown to

support a traditional elements approach, the "fairly embraced" approach of *Baker* is no longer valid in determining lesser included offenses. Additionally, that portion of the Manual for Courts–Martial that indicates that a lesser included offense may contain an element not found in the charged offense, MCM, 1984, Part IV, ¶ 2, is inconsistent with Article 79 and therefore is contrary to Article 36(a).[5]

■ In determining whether the Article 108 offense of which appellant was convicted is necessarily included in the offense charged, we employ the elements approach set forth in *Schmuck* to determine whether the elements of the Article 108 offense "are a subset of the charged offense." *Schmuck*, 489 U.S. at 716, 109 S.Ct. at 1450, 103 L.Ed.2d at 746. We find that they are not.[6] An essential element of an Article 108 offense is that the item sold be "military property of the United States." MCM, 1984, Part IV, ¶ 32(a). The charged offense contains no such element. Additionally, although the specification of the charged offense alleges that the item sold was a M16–A2 firearm, that designation does not specifically state or even imply that the firearm was military property of the United States since nothing in the record establishes that such a weapon is not used by civil law enforcement agencies such as the Federal Bureau of Investigation, the Secret Service, the Border Patrol, any number of state agencies, or even private citizens who have properly licensed and paid required taxes on such an automatic-fire rifle.

Accordingly, the finding of guilty of Specification 1 of Charge II is set aside and the specification is dismissed. Assignments of error I and II are without merit. Because of our action below, assignment of error III need not be addressed.[7] The remaining findings approved on review below are affirmed.

### Prosecution Evidence of Appellant's Father's Criminal History

Prosecution evidence introduced prior to findings showed that appellant had given the stolen firearm to his father prior to its sale to a government informant. During the presentencing portion of the trial a Naval Investigative Service (NIS) agent testified for the prosecution that the father had a criminal record going back to 1959 based on a report he had seen that was sent to a local police agency from the National Crime Information Center (NCIC), a part of the Federal Bureau of Investigation (FBI). That record included involvement in breaking and entering, being a fugitive from justice, and conviction for murder in New York. Additionally, the agent said that local police had informed him that the father had recently tried to place a bomb under another person's vehicle. The agent further testified that he provided an affidavit for use at the father's parole revocation hearing, that the father's parole was revoked, and that the father was in prison at the time of this trial. The only apparent basis for introduction of this testimony was to show the impact on society of appellant's transfer of the M16–A2 to a dangerous convicted felon.[8] Trial defense counsel ob-

---

**5.** Article 36(a), UCMJ, 10 U.S.C. § 836(a) states:
Pretrial, trial, and post-trial procedures, including methods of proof, for ... courts-martial ... may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter.

**6.** The elements of the 18 U.S.C. § 922(j) offense alleged in the specification are that appellant (1) sold a stolen firearm (2) which was moving as, which was a part of, or which constituted interstate or foreign commerce (3) knowing or hav-

ing reasonable cause to believe that the firearm was stolen. 18 U.S.C. § 922(j).

**7.** Our action makes it unnecessary to address the remaining specified issues regarding the finding of guilty of this specification and charge.

**8.** Trial counsel explained that he offered the testimony to show the impact on society of appellant placing an M16–A2 into the hands of a convicted felon. We presume that the evidence was offered pursuant to Rule for Courts–Martial 1001(b)(4) as an aggravating circumstance directly relating to or resulting from the offense of stealing the firearm.

jected to admission of this testimony on grounds that it was irrelevant, was not based on personal knowledge of the witness, was based solely on a hearsay document for which the agent had provided no information to establish a hearsay exception, and violated Military Rule of Evidence (Mil.R.Evid.) 403 in that its probative value was substantially outweighed by its prejudicial effect. Information filed during this appeal, uncontested by the Government, indicates that much of this highly prejudicial information was substantially incorrect.

The "fact that is of consequence" to be established by the agent's testimony is that appellant's father was convicted of the offenses mentioned by the agent, not the fact that entries to that effect appear in the NCIC database. *See* Mil.R.Evid. 401. Mil. R.Evid. 602 makes clear that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The record establishes beyond any doubt that the agent had no personal knowledge of the criminal convictions except from reading the NCIC report.[9]

■ The agent testified regarding the civilian convictions solely based on the report which was hearsay and therefore was inadmissible itself unless it qualified as an exception to the hearsay rule under the Military Rules of Evidence or was admissible on another ground. *See* Rule for Courts–Martial 1001(b)(3)(C). It goes without saying that the contents of an inadmissible hearsay document may not be made admissible by having a witness read the report and appear at trial to testify as to its contents. Based on the evidence in this record, the report does not qualify as a record of a regularly conducted activity under Mil.R.Evid. 803(6)[10] since nothing therein shows that the report or the entries in the database upon which the report was based were "made at or near the time by, or from information transmitted by, a person with knowledge" of the conviction. The NCIC operative does not apparently possess such knowledge and does not enter the information at or near the time of the conviction. Nothing in the record establishes who transmits the information to the NCIC. Additionally, the proponent of evidence to be admitted under Mil.R.Evid. 803(6) must establish admissibility through the testimony of the custodian of the record or a "qualified witness." The testifying agent was not the custodian of the record, and nothing in the record establishes that he "was generally familiar with the records-keeping system," *see United States v. Garces*, 32 M.J. 345, 347 (C.M.A. 1991); *United States v. Tebsherany*, 32 M.J. 351, 355 (C.M.A.1991), employed in the NCIC to qualify him as an appropriate witness to lay a foundation to admit the report as one of a regularly conducted activity. As noted previously, nothing in the agent's testimony establishes who sends the information to the NCIC. Because the agent was not shown to possess the required familiarity with the NCIC records-keeping system, and nothing indicates from whom

---

9. The agent testified that the NCIC report was attached to the NIS investigation regarding the theft and sale of the M16–A2. Trial counsel indicated that he could offer the NCIC report itself but chose to rely on the agent's testimony regarding it. We cannot comprehend why trial counsel did not offer the report into evidence in lieu of the agent's perhaps faulty memory of its contents. Trial defense counsel made no objection to the testimony based on the best evidence rule found in Mil.R.Evid. 1002, accordingly, that objection is waived. This was a trial before military judge alone who certainly had discretion to invoke Mil.R.Evid. 1002 and examine the report to ensure the accuracy of the agent's testimony. Had he done so, we strongly suspect that errors in the agent's testimony would have been apparent to him.

10. Mil.R.Evid. 803(6), Records of a Regularly Conducted Activity, provides:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

the information regarding the convictions is received, it follows that the record does not establish the trustworthiness of the information in the database or a report generated from it. *See Garces* at 347.

█ Nor does the report qualify as a public record or report under Mil.R.Evid. 803(8).[11] Clearly, the NCIC "rap sheet" is not a record or report of the activities of the NCIC since the conviction did not occur as part of any activity of that office. *See* Mil.R.Evid. 803(8)(A). The NCIC operative who entered the information into the database had not observed the actual judgment of conviction for any of these crimes and took no part in preparing any court record which was intended to accurately record the fact of conviction, rather the operative relied solely on information sent to the NCIC from a source that is unidentified in the record of trial. *See* Mil.R.Evid. 803(8)(B). The testimony was offered against the accused, accordingly, Mil.R.Evid. 803(8)(C) offers no possible basis for admission. Finally, as concluded previously, nothing in the record establishes the trustworthiness of the information contained in the database and, thus, in the report.

█ Even had the agent been able to lay an adequate foundation to establish a hearsay exception for admission of the report itself, another objection to consideration of the contents of the report is evident. A fundamental aspect of the NCIC report is

that the information contained within it concerning appellant's father's criminal history was based on hearsay information received at the NCIC. Thus, the hearsay report included hearsay information that itself was inadmissible unless it qualified under an exception to the hearsay rule of the Military Rules of Evidence. Mil. R.Evid. 805.[12]

Mil.R.Evid. 805 was violated in this case because nothing in the record establishes what information is sent to the NCIC that prompts an entry into the database. A portion of the agent's testimony suggests that information concerning an offense may be received even prior to the time a formal charge is made. This testimony comports with our common knowledge that the NCIC database contains reports of arrests and entry of formal charges as well as convictions. Nothing in the record establishes an exception to the hearsay rule for the information received and relied upon by NCIC employees in entering information into the database. If, however, the agent had testified based on a general familiarity with the requirements and procedures employed at the NCIC that entries are only made upon receipt of information that satisfies the requirements of the Military Rules of Evidence for authentication, *see* Mil.R.Evid. 901, 902, and a hearsay exception, Mil.R.Evid. 805 would not have been violated. We conclude that the testimony of the agent about the contents of the report was inadmissible.[13]

11. Mil.R.Evid. 803(8), Public Records and Reports, provides:

> Records, reports, statements, or data compilations, in any form, of public office or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers or other personnel acting in a law enforcement capacity, or (C) against the government, ..., unless the sources of information or other circumstances indicate lack of trustworthiness.

12. Mil.R.Evid. 805, Hearsay Within Hearsay, provides:

> Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an

exception to the hearsay rule provided in these rules.

13. Because the agent testified about the contents of a hearsay document that contained hearsay of doubtful trustworthiness, his testimony probably should have been excluded under Mil. R.Evid. 403. We agree that "[a]lthough Rule 805 admits hearsay within hearsay as long as there are exceptions that satisfy each hearsay problem, it probably is the case that the more levels of hearsay pyramided together the more likely it is that the court will exclude evidence under Rule 403." Stephen A. Saltzburg Et Al, Military Rules of Evidence Manual 872 (3rd ed. 1991). In this case, the testimony carried an obvious danger of unfair prejudice and of misleading the sentencing authority due to its questionable accuracy and completeness. Indeed, had trial counsel obtained and offered proof of

■ The agent's testimony that local police told him that appellant's father had placed a bomb under another person's vehicle is classic hearsay. This evidence was also inadmissible since the record evidences no exception to the hearsay rule or any other provision of the Military Rules of Evidence that would permit its consideration.

### Conclusion

Specification 1 of Charge II embraces a serious criminal act separate from the theft of the firearm. In addition, the erroneously admitted evidence concerning appellant's father's alleged criminal history is highly prejudicial and probably was an important sentencing factor. We conclude that reassessment of the sentence in accordance

conviction by court documents meeting the requirements of Mil.R.Evid. 902, this entire issue would have been obviated and in-court time would have been saved. Military judges should be alert to the risk of undue prejudice and misleading the fact-finders by admitting layers

with the principles set forth in *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990) and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986) is inappropriate.

Accordingly, the sentence is set aside. The record is returned to the Judge Advocate General of the Navy. A rehearing on sentence is authorized.

Senior Judge JONES and Judge REED concur.

of hearsay information that is technically admissible and should provide the appellate courts with the benefit of their analysis under Mil. R.Evid. 403 by rendering special findings. We do not decide whether the testimony should have been excluded under Mil.R.Evid. 403.