*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Gene N. WILLIAMS, Sergeant**
United States Army, Appellant

**No. 17-0285**
Crim. App. No. 20130582

Argued January 9, 2018—Decided June 27, 2018

Military Judges: Stephen Castlen, Tara Osborn,
and Karin Tackaberry

For Appellant: *Lieutenant Colonel Christopher D. Carrier* (argued); *Major Brendan R. Cronin* and *Captain Cody Cheek* (on brief) ; *Frank J. Spinner*, Esq.

For Appellee: *Captain Allison Rowley* (argued); *Colonel Tania M. Martin, Lieutenant Colonel Eric K. Stafford,* and *Major Michael E. Korte* (on brief); *Captain Austin L. Fenwick* and *Captain Tara E. O'Brien Goble.*

Chief Judge STUCKY delivered the opinion of the Court, in which Judges RYAN, OHLSON, SPARKS, and MAGGS, joined.

————————

Chief Judge STUCKY delivered the opinion of the Court.[1]

In *United States v. Hills*, this Court unanimously held that the use of charged offenses as propensity evidence under Military Rule of Evidence (M.R.E.) 413 prejudiced an accused's constitutional right to be presumed innocent until proven guilty. 75 M.J. 350, 356 (C.A.A.F. 2016). We further held that an accompanying propensity instruction was likewise constitutional error. *Id.* at 357. Although our decision was not ambiguous, this is the third case in which we have

---

[1] This case was heard prior to Judge Maggs's confirmation and appointment to this Court. Judge Maggs was substituted for Senior Judge Cox on April 10, 2018.

had to correct a Court of Criminal Appeals' judgment on this issue. *See United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017); *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017).

In the instant case, the military judge issued a propensity instruction that clearly violated our holding in *Hills*. On remand, the United States Army Court of Criminal Appeals (CCA) deemed such error to be harmless, and concluded that an exception to *Hills* exists when the propensity instruction stemmed from an offense that had been independently proven beyond a reasonable doubt and "flowed in only one direction." *United States v. Williams*, No. ACM 20130582, 2017 CCA LEXIS 24, at *2–3, 2017 WL 218835, at *1–2 (A. Ct. Crim. App. Jan. 12, 2017) (unpublished). We disagree, and hold that no such exception exists.

## I. Procedural History

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of rape on divers occasions, four specifications of forcible sodomy, and five specifications of assault consummated by a battery, in violation of Articles 120, 125, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, and 928 (2000, 2006). The panel sentenced Appellant to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The CCA affirmed the findings of guilty and the approved sentence. *United States v. Williams*, 75 M.J. 621, 630 (A. Ct. Crim. App. 2016).

Appellant filed a Petition for Grant of Review, which this Court granted. *United States v. Williams*, 75 M.J. 376 (C.A.A.F. 2016) (order granting review). We subsequently summarily reversed and remanded Appellant's case for reconsideration in light of *Hills*. *United States v. Williams*, 75 M.J. 430 (C.A.A.F. 2016).

On remand, the CCA again affirmed the findings of guilty and the sentence, holding that although the military

judge issued an improper propensity instruction, such error was harmless beyond a reasonable doubt. 2017 CCA LEXIS 24, at *4, 2017 WL 218835, at *2.

## II. Background

Appellant married TW in May 2000. During trial, TW testified that while they were married, Appellant raped her on divers occasions between late 2000 and early 2003. TW claimed that Appellant forced her to have nonconsensual sex "[q]uite often, three or four times a week, sometimes every[ ]day of the week" over a 108-week period. TW's rape allegations formed the basis of Charge I.[2]

After Appellant and TW divorced in 2004, Appellant married SW. Appellant and SW were married for nearly eight years, during which time Appellant allegedly forcibly anally sodomized her and physically assaulted her multiple times. SW testified that on one occasion in November 2007, she escaped from Appellant's grasp while he was anally sodomizing her. She sought safety in their children's bedroom and attempted to barricade the door, but Appellant kicked in the door, causing it to come crashing down on her head. Scared for her life and bleeding from her head, SW ran to a neighbor's house for help. That neighbor called 911, and an ambulance transported SW to the hospital. Photographs taken that night document the broken door and SW's injuries from the assault. Two days later, Appellant issued a sworn statement that, aside from the sodomy, largely corroborated SW's version of events from that night.

After several years of marriage, SW disclosed the sexual abuse to a neighbor as well as a police academy trainee she met through an acquaintance. In March 2011, SW also reported the abuse to the Sanford Police Department. SW's allegations of forcible sodomy and physical abuse formed the bases of Charges II and III, respectively.

---

[2] Trial counsel moved for, and the military judge granted, dismissal of three specifications after arraignment but prior to Appellant's plea. Given that the parties, the military judge, and even the CCA referred to the Charges and Specifications as they appear on the "flyer" provided to the panel, we do as well to prevent further confusion.

Before trial, the Government notified Appellant of its intent to offer evidence of the rapes of TW to show Appellant's propensity to anally sodomize SW and vice versa. The defense made a motion in limine, asking the military judge to preclude the Government from using this evidence for propensity purposes. Because any evidence that was the subject of the motion was also evidence of a charged offense, the military judge recognized that the proper question was not whether the evidence was admissible, but rather what accompanying instructions the court should give. Accordingly, the military judge questioned the ripeness of the issue, signaled that the proper time to address the issue would be when discussing panel instructions, and did not then explicitly rule on the motion.[3]

After the close of evidence, the military judge held an Article 39(a) session to discuss instructions. He informed the parties he intended to give a propensity instruction, and provided an opportunity to object and request additional instructions. The defense did not object to the military judge's intent to instruct the members on propensity evidence. The military judge then provided the parties with a written draft copy of his instructions, (which included an M.R.E. 413 propensity instruction. Again, even though the military judge invited comments, defense counsel raised no objection to the proposed propensity instruction, although he did to others.

The military judge then instructed the panel that the "on divers occasions" rape allegations by TW (Charge I) could be considered as propensity evidence in proving the sodomy allegations by SW (Charge II). Specifically, he instructed the members that:

> Evidence that the accused committed rape on divers occasions alleged in The Specification of Charge I may have no bearing on your deliberations in relation to any of the allegations of forcible sodomy in the Specifications of Charge II *unless you first determine by a preponderance of the evidence* that it is more likely than not that the offenses alleged in The Specification of Charge I occurred. If you determine, *by a preponderance of the evidence* that the offenses alleged in The Specifica-

---

[3] A different military judge presided at trial.

> tion of Charge I occurred, *even if you are not convinced beyond a reasonable doubt* that the accused is guilty of those offenses, you may nonetheless then consider the evidence of those offenses, for its bearing on any matter to which it is relevant in relation to the forcible sodomys [sic] alleged in Charge II. *You may also consider the evidence of such other acts of sexual assaults for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual assault.*

(Emphasis added.) Defense counsel made no objection to the instruction as given. While the military judge did not explicitly instruct the panel that they could use evidence from Charge II (sodomy) to prove Appellant's propensity to commit Charge I (rape), his M.R.E. 413 instruction did allow members to take into account evidence of other acts of sexual assaults for propensity purposes.

The panel members ultimately convicted Appellant of all of the offenses contained within Charge I and Charge II, as well as the majority of the specifications alleged in Charge III.

### III. Law and Discussion

"Where [constitutional] instructional error is preserved, we test for harmlessness." *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017). "However, if the accused fails to preserve the instructional error by an adequate objection or request, we test for plain error." *Id.*; *see Guardado*, 77 M.J. at 93.

"An accused cannot always rely on a motion *in limine* to preserve an issue for appellate review absent further objection." *United States v. Dollente*, 45 M.J. 234, 240 (C.A.A.F. 1996). As Appellant's motion in limine was not yet ripe and he did not renew his objection when afforded the opportunity to do so, we review for plain error. *See Guardado*, 77 M.J. at 93. Under this Court's plain error jurisprudence, to establish plain error an appellant must demonstrate (1) error, (2) that is clear or obvious at the time of appeal, and (3) prejudicial. *Id.*

In *Hills*, we held that using charged misconduct as M.R.E. 413 evidence was an abuse of discretion and that the military judge's accompanying instructions "constituted con-

stitutional error that was not harmless beyond a reasonable doubt." *Hills,* 75 M.J. at 353. In the wake of *Hills*, our lower courts have attempted to impermissibly narrow that holding by carving out exceptions that run contrary to an accused's presumption of innocence. Consequently, in *Hukill*, we clarified that the prohibition against using charged conduct as "propensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims, or whether the events are connected." 76 M.J. at 222. Similarly, in *Guardado*, we declined the CCA's invitation to confirm that a *Hills* error is necessarily rendered harmless by the acquittal of a specification used for propensity purposes. 77 M.J. at 94.

In this case, the military judge's instruction indisputably ran contrary to our holding in *Hills*. After determining that the acts alleged in the Specification of Charge I fell within the ambit of M.R.E. 413, the military judge instructed the panel that if they determined by a preponderance of the evidence that Appellant had committed the offenses alleged in the Specification of Charge I, they could use that finding "on any matter to which it is relevant in relation to the forcible sodomy alleged in Charge II," including Appellant's "propensity or predisposition to engage in sexual assault." The military judge's instruction further allowed panel members to "*also* consider the evidence of *such other acts* of sexual assault for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual assault." (Emphasis added.) Given our holding in *Hills*, such instruction, although not error at the time of trial, is undeniably clear and obvious error at the time of appeal.

Having found error, we must determine whether such error prejudiced Appellant's substantial rights.

First, with respect to the offense alleged in Charge I, we are not convinced that the erroneous propensity instruction played no role in Appellant's conviction. Here, the CCA reasoned that as "the propensity instruction flowed in only one direction," the members convicted Appellant of the Specification of Charge I without reliance on propensity evidence and thus "the Specification of Charge I is entirely unaffected by *Hills*." 2017 CCA LEXIS 24, at *2–3, 2017 WL 218835, at *1. We disagree. This characterization distorts

the military judge's instruction, and conveniently overlooks the portion of the instruction that explicitly allowed panel members to "*also* consider the evidence of *such other acts* of sexual assault" for propensity purposes. (Emphasis added.) Under a plain reading of the entirety of the military judge's instruction, we conclude that the panel members could have reasonably interpreted such guidance to allow them to consider evidence of Charge II for its bearing in relation to Charge I. Accordingly, we hold that Appellant's conviction of the Specification of Charge I was not immune from the erroneous propensity instruction that tainted the specifications of Charge II.

Second, we reject the CCA's conclusion that Appellant's case falls within an exception to *Hills*. Relying on our discussion in *Hills* concerning *People v. Villatoro*, 281 P.3d 390 (Cal. 2012), the CCA concluded that "an exception specifically anticipated by the CAAF" exists when an offense is first proven beyond a reasonable doubt and that Appellant's case falls under such an exception. 2017 CCA LEXIS 24, at *3–4, 2017 WL 218835, at *1–2. This conclusion significantly misconstrues our discussion of *Villatoro*. In *Villatoro*, a California judge admitted five instances of rape of five different victims as propensity evidence. *Villatoro*, 281 P.3d at 394–95. However, " '[T]he instruction [in *Villatoro*] clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. Thus, there was no risk the jury would apply an impermissibly low standard of proof.' " *Hills*, 75 M.J. at 357 (first alteration in original) (quoting *Villatoro*, 281 P.3d at 400).

Thus, unlike the case at hand, *Villatoro* "turned in part on the fact that 'the modified instruction did not provide that the charged offenses used to prove propensity must be proven by a preponderance of the evidence.' " *Id.* (citation omitted). In contrast, here the military judge gave a propensity instruction that explicitly referred to the preponderance of the evidence standard. *Villatoro* is further distinguishable for, as we noted in *Hills*, "the California Supreme Court did not consider the issue of the accused's right to be presumed innocent of all charges." 75 M.J. at 357.

Despite these differences, the CCA relied on our discussion of *Villatoro* to conclude that as the evidence used for

propensity purposes seemingly "stemmed from a specification that had been independently proven beyond a reasonable doubt," the error was inherently harmless. 2017 CCA LEXIS 24, at *3–4, 2017 WL 218835, at *1–2.

This reasoning is flawed for two reasons. First, for the reasons outlined above, we dispute the conclusion that the Specification of Charge I was necessarily free from taint. Second, the CCA's logic assumes we know the order in which the panel voted on the charged offenses. However, a panel's deliberations are inherently mysterious, and we are not in a position to know how members reach their decisions. *See United States v. Davis*, 2 C.M.A. 505, 511, 10 C.M.R. 3, 9 (1953) (acknowledging that the Court "cannot know [what] provided the basis for [a] conviction"). This is especially true where, as in this case, the military judge advised the members that "[t]he order in which the specifications are to be voted on should be determined by the president subject to objection by the majority of the members." In accordance with the military judge's instructions, nothing barred the members from first voting on the specifications of Charge II, relying in part on erroneous propensity evidence, *before* turning their attention to the Specification of Charge I. Consequently, under the facts of this case, we cannot deny that the military judge's "muddled … instructions [potentially] implicate[d] 'fundamental conceptions of justice' under the Due Process Clause" and heightened "the risk that the members would apply an impermissibly low standard of proof." *Hills*, 75 M.J. at 357 (citation omitted).

While "[t]here are circumstances where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by 'tipp[ing] the balance in the members' ultimate determination,'" *Guardado*, 77 M.J. at 94 (alteration in original) (quoting *Hills*, 75 M.J. at 358), this, with one notable exception, is not such a case. While we adopt the CCA's finding that both TW and SW provided credible testimony concerning the abuse they each suffered at the hands of Appellant, their accounts were largely uncorroborated by eyewitness testimony

or any conclusive documentary or physical evidence.[4] Absent any supporting evidence, we simply cannot be certain that the erroneous propensity instruction did not taint the proceedings or otherwise "contribute to the defendant's conviction or sentence." *Hills,* 75 M.J. at 357 (internal quotation marks omitted) (citation omitted). Accordingly, we hold that the military judge's M.R.E. 413 instruction was not harmless with respect to the Specification of Charge I or Specifications 2, 3, and 4 of Charge II.

However, Specification 1 of Charge II is not plagued by the same deficiency, at least in part. With respect to the night SW ended up in the hospital, the Government introduced photographs of the door Appellant kicked in on SW's head as well as photographs of SW's wounds. A neighbor and a police officer bore witness to her distraught demeanor and injuries. Moreover, Appellant issued a sworn statement that, though silent on the issue of sodomy, largely confirmed and supported SW's story. With the benefit of this corroborating evidence, we are confident that Appellant committed sodomy with SW by force and without her consent that evening. Accordingly, we affirm Appellant's conviction on Specification 1 of Charge II, by excepting "on divers occasions between on or about 21 September 2007 and on or about 7 April 2008" and substituting therefor, "on or about 21 November 2007."

**IV. Judgment**

The judgment of the United States Army Court of Criminal Appeals is affirmed in part and reversed in part. The findings as to the Specification of Charge I and Specifications 2, 3, and 4 of Charge II are set aside. The sentence is set aside. We affirm Appellant's conviction on Specification 1 of Charge II, by excepting "on divers occasions between on or about 21 September 2007 and on or about 7 April 2008" and substituting therefor, "on or about 21 November 2007." As Appellant has not challenged his convictions for the assaults consummated by a battery he perpetrated against SW, we

---

[4] While SW's account was bolstered by evidence of prior consistent statements she made to neighbors, acquaintances, and police officers, these witnesses had no firsthand knowledge of the abuse and could only testify as to what SW told them.

also affirm the remaining findings. The record is returned to the Judge Advocate General of the Army with a rehearing as to the Specification of Charge I authorized to the extent that the charge and specification are not barred by the statute of limitations. *See United States v. Mangahas*, 77 M.J. 220 (C.A.A.F. 2018); *United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998) (recognizing that the federal circuits are in agreement "that extending a limitations period before the prosecution is barred does not violate the Ex Post Facto Clause"). *But see United States v. Lopez de Victoria*, 66 M.J. 67, 73–74 (C.A.A.F. 2008) (holding that the 2003 amendment to Article 43, UCMJ, 10 U.S.C. § 843, did not retroactively extend the statute of limitations due to statutory construction).[5] Rehearing is also authorized on Specifications 2, 3, and 4 of Charge II, and on the sentence.

---

[5] Appellant's motion to dismiss the Specification of Charge I on a statute of limitations ground in light of *Mangahas*, 77 M.J. 220, is denied without prejudice. The parties may address any potential retroactivity issues concerning the statute of limitations on remand or at the rehearing.